**AMERICAN HOIST & DERRICK COMPANY and T. S. DeCuir, Plaintiffs-Appellants, Cross-Appellees,**

v.

**The MANITOWOC COMPANY, INC., Defendant-Appellee, Cross-Appellant.**

Nos. 78–1523, 78–1524.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1979.

Decided July 30, 1979.

Glen O. Starke, Andrus, Sceales, Starke & Sawall, Milwaukee, Wis., for plaintiffs-appellants, cross-appellees.

Philip H. Mayer, Chicago, Ill., for defendant-appellee, cross-appellant.

Before SWYGERT and BAUER, Circuit Judges, and EAST,* District Judge.

PER CURIAM.

In these alleged patent infringement proceedings, the plaintiffs American Hoist & Derrick Company and T. S. DeCuir appeal from the judgment dismissing the action entered by the District Court on February 27, 1978. The defendant The Manitowoc Company, Inc. cross-appeals from a separate judgment of even date dismissing its counterclaims.

We note jurisdiction and for the valid reasons stated in the District Court's opinion, 448 F.Supp. 1372 (E.D.Wis.1978), the several judgments are each affirmed. We are satisfied that the District Court's opinion provides sufficient and correct answers to the various contentions of the appellants and cross-appellant on this appeal.

We do note, however, a strained and inconsequential inconsistency in the District Court's opinion. The District Court first opined, 448 F.Supp. at 1383–84:

"The issue, as I view it, is whether the roller carrier of the accused Ringer cranes constitutes 'a platform mounted for horizontal rotation.' I find that it is. The roller carrier rides atop the encircling ring, thereby providing horizontal rotation. The mast and boom are pivotally mounted to the roller carrier, which serves as a platform. Therefore, I find that the mast and boom are pivotally mounted on a platform for horizontal rotation, as described in the DeCuir patent."

And inconsistently at 1384:

"To summarize, all of the accused Ringer cranes lack two of the elements described in claim 12 of the DeCuir patent: (1) 'mobile support means,' and (2) a mast and boom pivotally mounted on the platform. Furthermore, two of the accused Ringer crane models, the 4600 Series II and III, lack power means for pivoting the mast. Accordingly, I find

that the accused cranes do not infringe claim 12 of the DeCuir patent."

In view of the opinion as a whole, we take the District Court's language "(2) a mast and boom pivotally mounted on the platform" to infer that the word "platform" was intended to mean a mobile platform. The boom and mast on the Ringer crane are pivoted on a boom carrier which rides directly on the ring which, however, is immobile during lifts.

Furthermore the District Court concluded, 448 F.Supp. at 1384, that:

"Since claim 13, referring to the 'mast and boom stop means,' and claim 14, referring to a means connected to the boom for supporting a load, incorporate by reference the apparatus claimed in claim 12, there can be no infringement of those claims either. 35 U.S.C. § 112."

To find infringement, the Court must determine that every element of a claim alleged to be infringed must be found in the accused device, *Mobil Oil Corp. v. Filtrol Corp.,* 501 F.2d 282, 291 (9th Cir. 1974)— that the accused device is a copy "either without variation, or with such variations as are consistent with its being in substance the same thing." *Engelhard Industries, Inc. v. Research Instrumental Corp.,* 324 F.2d 347, 351 (9th Cir. 1963), *quoting Burr v. Duryee,* 68 U.S. 531, 573, 17 L.Ed. 661 (1863). Therefore, even if only one of the two or three reasons for non-infringement is sustained, the conclusion of non-infringement remains intact.

The judgments of the District Court are affirmed.

AFFIRMED.

SWYGERT, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from the majority's decision insofar as it affirms the district court's conclusion that the DeCuir patent (patent no. 3,202,299) is valid, and fails to declare the Sky Horse (Brown) patent (pat-

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

ent no. 3,842,984) invalid.[1] Defendant-appellee, the Manitowoc Company, Inc. ("Manitowoc"), in its cross-appeal, challenges the validity of both patents.[2] It contends that under the obviousness standard of 35 U.S.C. § 103 and *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the DeCuir and Sky Horse patents are invalid. I agree.

An invention must be nonobvious to be patentable. In *Graham* the Supreme Court explained the analysis necessarily underlying a conclusion about the obviousness of an invention. The Court stated:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.

*Id.* at 17, 86 S.Ct. at 694.

The trial court concluded that several features of the DeCuir patent made it a nonobvious advance from the prior art and therefore a valid patent. These features were reiterated in the brief submitted on behalf of the cross-appellees, American Hoist and Derrick Company and T. S. DeCuir ("American Hoist"). The trial court found that a persistent problem in crane design was increasing lift capacity while minimizing both stress in the crane's components and the danger of tipping. The trial court concluded (and American Hoist contends) that the DeCuir patent offered a unique solution to this problem in its use of a long mast in addition to the standard A–frame of the crane, its deployment of a free-swinging counterweight independent of the crane deck, and its adoption of a unique mast/boom configuration in the mobile lifting structure.

I agree with the contention of American Hoist that no crane in the prior art embodies all these principles. The ultimate test under *Graham,* however, is whether the subject matter of the DeCuir patent is obvious given the background both of the prior art and of the level of ordinary skill in crane design. And while no single prior crane embraces all the principles inherent in the DeCuir patent, all the principles claimed as unique in the DeCuir patent can be found in the prior art of crane design. The principles found in claims 12, 13, and 14 of the DeCuir patent should have been obvious to a person possessing ordinary skill in the field of crane design.

The trial court's conclusion (and American Hoist's assertion) that the DeCuir patent is valid because it uniquely adopts a long mast "in addition" to the standard A–frame (boom and gantry) in order to reduce stress on the crane structure is incorrect. First, the claims of the DeCuir patent do not describe a "long," or "tall" mast, or a mast "in addition" to the standard A–frame. And it is the claims of a patent, not their practical embodiment, which are relevant. *See CTS Corp. v. Piher Int'l Corp.*, 527 F.2d 95, 100 (7th Cir. 1975), *cert. denied*, 424 U.S. 978, 96 S.Ct. 1485, 47 L.Ed.2d 748 (1976). Second, the principle which American Hoist asserts is novel in the DeCuir crane was articulated previously in the Davidson patent (patent no. 2,609,939) which stated:

> It is desirable to have the A–frame of such height that the angle of incidence of the hoist cable to the boom will be sufficient to avoid high stresses in the hoist cable and boom.

Finally, even if the DeCuir patent did specifically provide for a mast in addition to the standard boom and gantry, this would not have been unprecedented in crane art. The Manitowoc model 4500 prior art crane had a mast, in addition to a separate gantry, which was connected by a boom hoist apparatus to the boom. Thus, this first, allegedly novel feature of the DeCuir patent is present in the prior art.

---

1. The trial court never expressly ruled on the validity of the Sky Horse patent. *See infra* p. 632.

2. Manitowoc challenges claims 12, 13, and 14 of the DeCuir patent and claims 1 and 2 of the Sky Horse patent.

The second feature of the DeCuir concept emphasized by the trial court and American Hoist is the use of a free-swinging counterweight independent of the crane deck. Counterweights had been used on a variety of prior art cranes to increase stability when lifting heavy loads. Both the 1954 Manitowoc Liberace crane and the 1916 Greene crane used counterweights, and a 1948 French patent described a crane with a free-swinging counterweight. Hanging a counterweight from the mast of a crane was an obvious technique to increase a crane's stability.

Finally, the configuration of the mast and boom in the DeCuir patent is not novel. The mast and boom of the 1951 Manitowoc 4500 crane were adjacent and pivoted together, just as in the DeCuir patent. The mast of the Manitowoc 4500 crane, like the mast in the claims of the DeCuir patent, was pivotally mounted for movement through a vertical arc. And this movement was effectuated through a power mechanism. Thus, this feature of the DeCuir patent was present in the prior art, leaving no feature of the DeCuir patent which was not present in the prior art and obvious to a person skilled in crane design. The DeCuir patent should not have been declared valid.

The trial court, although reaching no conclusion about the validity of the Sky Horse patent, concluded on the basis of the evidence adduced at trial:

> The Sky Horse patent is an improvement on the counterbalancing crane concept described in the DeCuir patent claims 12 through 14. Three basic changes appear in the Sky Horse patent:
>
> (1) The free-swinging counterweight was replaced with a counterweight trailer assembly supported by wheels.
>
> (2) Coupling arms were added to connect the counterweight trailer assembly to the crane deck so as to permit the assembly to rotate with the crane deck around the vertical axis of the crane. The coupling arms were pivotally connected to the crane deck to permit the trailer assembly to lift vertically.
>
> (3) The second linkage was made variable so that the counterweight trailer assembly lifts vertically and acts on the mast before the crane deck begins to assume any counterbalancing load. As explained previously, the shorthand phrase used at the trial to describe this movement is "1–2 lifting."

These three changes are not sufficient, given the obviousness of the DeCuir concept, to validate the Sky Horse patent.[3] The first two features are obvious regardless of whether analogous devices existed in prior crane art and the third essentially can be found in the operation of the prior art Ringer 4000 model.

Given a desire to eliminate the free-swinging character of the counterweight and to locate it on the ground while retaining its mobility, placing wheels beneath the counterweight was an obvious solution. Similarly, attaching the counterweight to the crane body was an obvious innovation. This court recently repeated the nearly century old admonition of the Supreme Court:

> The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures.

*Atlantic Works v. Brady,* 107 U.S. 192, 200, 2 S.Ct. 225 (1883), quoted in *Republic Industries, Inc. v. Schlage Lock Co.,* 592 F.2d 963 (7th Cir., 1979). Further, both of these

---

3. "Obviousness is a question of law." *Pederson v. Stewart-Warner Corp.,* 536 F.2d 1179, 1180 (7th Cir. 1976), and cases cited therein. Thus, given the trial court's factual findings and the evidence adduced at trial, we are not precluded from making an ultimate determination on the validity of the Sky Horse patent despite the fact that the trial court did not reach the issue.

"innovations" were present in prior crane art. Both the 1869 Hammond patent and the Ringer 4000 had wheels attached beneath a counterweight. And the counterweight of the Ringer 4000 was attached to the crane body.[4]

The trial court found that the final Sky Horse improvement over the DeCuir patent, "1–2 lifting," (described *supra*, at p. 7) had already been adopted in the model 4000 Ringer. American Hoist contends, nevertheless, that the Sky Horse's incorporation of this principle was not obvious. American Hoist argues that the principle of 1–2 lifting was not claimed in the Beduhn patent (patent no. 3,485,383) (the Ringer 4000 is a commercial adaptation of the Beduhn patent), and that the rigging used in the Sky Horse distinguishes it from the Ringer 4000.

Neither of these arguments is persuasive. The fact that the 1–2 lifting of the Ringer 4000 was not patented does not remove that feature from the prior art of crane design. And the rigging difference between the two cranes is not substantial enough to render the 1–2 lifting mechanism of the Sky Horse nonobvious. Thus, this feature of the Sky Horse, like the counterweight wheels and the coupling of the counterweight to the crane body, does not render the patent nonobvious.

For these reasons, the DeCuir and Sky Horse patents should have been declared invalid.

---

4. The Ringer counterweight was attached by a lug and slot arrangement rather than by pivoted arms (as in the Sky Horse patent), but these two systems produce the same result: the counterweight lifts independently of the crane body while rotating in tandem with it.