FMC CORPORATION,
Plaintiff–Appellant,

v.

The MANITOWOC COMPANY, INC.,
Defendant–Appellee.

No. 87–1220.

United States Court of Appeals,
Federal Circuit.

Dec. 16, 1987.

Raymond P. Niro, Niro, Scavone, Haller & Niro, Ltd., Chicago, Ill., argued, for plaintiff-appellant. With him on the brief, were Timothy J. Haller and Robert A. Vitale, Jr. Also on the brief, were Richard B. Megley, and Ronald C. Kamp, and Paul E. Slater and Jerry M. Santangelo, Sperling, Slater & Spitz, P.C., Chicago, Ill.

Phillip H. Mayer, of Leydig, Voit & Mayer, and Richard S. Rhodes, Chadwell & Kayser, Ltd., Chicago, Ill., argued, for de-fendant-appellee. Also on the brief were Berton Scott Sheppard and Charles H. Mottier, Leydig, Voit & Mayer, and C. Lee Cook, Jr., Brian J. Redding, Marsha K. Hoover and Julia D. Mannix, of Chadwell & Kayser, Ltd., Chicago, Ill.

Before MARKEY, Chief Judge, BALDWIN, Senior Circuit Judge, and SMITH, Circuit Judge.

MARKEY, Chief Judge.

Appeal from a judgment of the United States District Court for the Northern District of Illinois, Eastern Division (Hart, J.), upholding the validity of U.S. Patent No. 3,485,383 ('383) owned by The Manitowoc Company, Inc. (Manitowoc), finding the '383 patent not infringed by FMC Corporation (FMC), and resolving the issues raised by FMC's claims of inequitable conduct, attorney fees, antitrust violation, and unfair competition in favor of Manitowoc. We affirm.

### Background

On September 5, 1980, FMC sued for a judgment declaring that its heavy lift cranes did not infringe the '383 patent, that the patent was invalid and unenforceable, and that Manitowoc's maintenance and threatened enforcement of the patent constituted unfair competition because FMC was forced to "design around" the patent procured through inequitable conduct. Manitowoc then sued FMC for infringement and FMC counterclaimed, alleging violation of the antitrust laws. The two cases were not formally consolidated but were treated and tried together.

Proceedings encompassed over six years in the district court and involved participation for varying periods of two magistrates and four district judges. The case, including pretrial skirmishes, generated over 1000 entries on 80 docket pages. The record exceeded 17,000 pages.

On January 30, 1987, after conducting six weeks of trial, hearing numerous witnesses, and rendering many rulings, Judge Hart entered a comprehensive 60–

page set of clearly stated findings and conclusions, in which he incorporated his evaluations of the evidence and his reasoning, and to which he appended drawings admitted as exhibits. *FMC Corp. v. Manitowoc Co.*, 654 F.Supp. 915, 2 USPQ2d 1969 (N.D. Ill.1987).[1] The invention, the issues, and the actions and contentions of the parties in this case are thoroughly set forth in the above-cited reports. Familiarity therewith is presumed and discussion here is limited to facts involved in disposition of this appeal.

### Issues

(1) Whether the district court abused its discretion in denying attorney fees.

(2) Whether the district court erred in resolving the antitrust issues against FMC.

(3) Whether the district court erred in resolving the unfair competition issues against FMC.

### OPINION

#### The Appeal

FMC says it appeals from the portions of the judgment that hold the '383 patent enforceable, deny its request for attorney fees, and reject its unfair competition and antitrust claims. Though FMC charges the district court with a Niagara of legal error on a plethora of issues, the appeal turns primarily on whether the district court correctly determined that Manitowoc was not guilty of inequitable conduct when it prosecuted its patent application twenty years ago.

Manitowoc did not appeal from the portion of the judgment based on the finding of noninfringement, and the '383 patent has expired. The validity and enforceability issues argued by the parties are thus twice mooted.[2] As discussed below, FMC cannot prevail unless it can show that the district court erred in determining that it did not carry its burden of proving by clear and convincing evidence, *J.P. Stevens & Co. v. Lex Tex, Ltd.*, 747 F.2d 1553, 1559, 223 USPQ 1089, 1092 (Fed.Cir.1984), *cert. denied*, 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed. 2d 60 (1985), facts requiring a determination that Manitowoc was guilty of inequitable conduct.[3]

FMC's brief says "The record suggests that the district court had difficulty understanding both the technical and legal issues before it." A study of the full record, however, indicates that FMC simply failed to carry its burden of persuading the court to adopt the "understanding" FMC sought.[4]

With no citation of applicable authority, FMC insists that Judge Hart was bound by earlier rulings of other judicial officers in the case relating to its charge of inequitable conduct.[5] FMC's initial brief calls those rulings "decisions" and "earlier findings and conclusions." Manitowoc's brief correctly points out that: (1) the rulings were on motions; (2) FMC's motion to have them declared "law of the case" was denied; (3) Judge Hart not only did not "ig-

---

1. FMC complains that some findings and conclusions were very like those proposed by Manitowoc. That circumstance is not so objectionable as to relieve FMC of its appellate burden of establishing error. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 571–73, 105 S.Ct. 1504, 1510–12, 84 L.Ed.2d 518 (1985).

2. Incredibly, FMC's briefs demand a new trial on validity and enforceability of a noninfringed patent that expired in December 1986.

3. As discussed, *infra*, FMC's *Walker Process* antitrust claim would require proof of fraud. *Korody–Colyer Corp. v. General Motors Corp.*, 828 F.2d 1572, 1578, 4 USPQ2d 1203, 1207 (Fed.Cir. 1987); *Argus Chem. Corp. v. Fibre Glass–Evercoat Co.*, 812 F.2d 1381, 1384–85, 1 USPQ2d 1971, 1973–74 (Fed.Cir.1987).

4. FMC does not attribute the same shortcomings to the district court's understanding in respect of the infringement issue on which FMC prevailed and in relation to which the court applied a claim interpretation FMC here labels legal error.

5. FMC also asserts, and Manitowoc disputes, that Judge Hart erred in not adopting what FMC says was the court's claim interpretation in *American Hoist & Derrick Co. v. Manitowoc Co.*, 448 F.Supp. 1372, 197 USPQ 677 (E.D.Wisc. 1978), *aff'd*, 603 F.2d 629, 202 USPQ 705 (7th Cir.1979). The dispute relates to issues now moot and need not be discussed in this opinion.

nore" the earlier rulings, as FMC says he did, but warned that the entire case would be tried *de novo;* (4) FMC succeeded in discovering documents but failed to carry its burdens of proof in live testimony at trial before an experienced judge; (5) FMC has not shown how the rulings on motions could be said to require another trial; (6) no final judgment having been entered before trial, Judge Hart would not be bound by any earlier rulings of any kind if he had made them himself; and (7) it would have been error to have treated discovery orders as summary judgments. In its reply brief, FMC simply ignores all that. FMC's argument is specious.

FMC attacks no finding as clearly erroneous under Rule 52(a), Fed.R.Civ.P. It demands a new trial because of alleged legal error in claim interpretation, in considering fewer than all the claims, in evaluating the materiality of documents FMC calls "the prior art," in applying variable standards of enablement, in finding the invention not on sale because it was not reduced to practice until after the critical date, and in failing to decide the issue of anticipation. FMC says it "asks for a new trial because there is prejudicial error in virtually every legal conclusion the district court reached," citing *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1547, 220 USPQ 303, 308 (Fed.Cir.1983) (findings based on error of law may be set aside), *cert. denied*, 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). FMC nowhere argues that it was denied full opportunity to try its case, or was impeded in presenting evidence, or was confronted with inadmissible evidence, or that the trial was in any other manner unfair.

Manitowoc says FMC distorts the record and the findings, cites only parts of the evidence, misrepresents other parts of the evidence, assumes facts favorable to FMC, mischaracterizes Judge Hart's findings and conclusions, does not even attempt to show that any error was prejudicial, fails to show that the evidence would justify a contrary result, and has from the beginning made numerous reckless charges (many now dropped and others continued without support in the record).

Having read and re-read the briefs and conducted the record research necessitated by the many issues raised and assertions made, this court is led to the realization that the sound and fury characterizing the briefs relates primarily to issues nondispositive of the appeal. Hence we need not lengthen this opinion with a discussion of those issues. Nor is it necessary that we determine on which if either side the angels reside.

### (1) Attorney Fees

FMC does not mention the district court's discretion, but says its request for attorney fees should have been granted because (a) Manitowoc's infringement claim was frivolous; and (b) Manitowoc was guilty of inequitable conduct when it failed to disclose certain documents and information to the Patent and Trademark Office (PTO) during prosecution of the application that resulted in the '383 patent. Neither basis is supported by the record.

### (a) Infringement Claim

Nothing in the record would have supported a finding that Manitowoc did not legitimately believe in the merits of its infringement allegation at trial. FMC's motion for partial summary judgment of noninfringement was denied on October 29, 1982, indicating that the issue was appropriate for trial. FMC's assertion that Manitowoc's infringement claim was frivolous is without merit.

### (b) Inequitable Conduct

FMC vigorously attacks on what it calls "legal grounds" the district court's determinations that Manitowoc's own documents (Q–1064 proposal and Beduhn speech) were conceptual, incomplete, nonenabling[6] and thus not material, and that the claimed invention was not "on sale" before the

---

6. FMC quotes its witness' testimony on the Q–1064 proposal, but ignores that part of the testimony of Manitowoc's expert, Shapiro, in which he said the device shown therein "would not work."

critical date. Manitowoc cites the record in defense of those determinations. That dispute relates only to materiality and need not here be addressed in detail, for a determination of inequitable conduct requires findings on materiality and intent and the district court here found the intent element totally absent, "even if" the documents were regarded as pertinent prior art.[7]

> There is no evidence of *any intent* to withhold any information from the Patent Office or to withhold evidence *known to be material* and controlling, *even if the documents are regarded as pertinent prior art.* The record does not support a finding of inequitable conduct on the part of the inventor or any Manitowoc representative.

654 F.Supp. at 930, 2 USPQ2d at 1979. (Emphasis added.)

> There is no basis for findings of "materiality," "gross negligence," or "intent to deceive" which would support a conclusion of inequitable conduct.

654 F.Supp. at 935, 2 USPQ2d at 1983.

▮▮▮ "Inequitable conduct" is not, or should not be, a magic incantation to be asserted against every patentee. Nor is that allegation established upon a mere showing that art or information having some degree of materiality was not disclosed. To be guilty of inequitable conduct, one must have intended to act inequitably. Thus, one who alleges a "failure to disclose" form of inequitable conduct must offer clear and convincing proof of: (1) prior art or information that is material; (2) knowledge chargeable to applicant[8] of that

prior art or information and of its materiality; and (3) failure of the applicant to disclose the art or information resulting from an intent to mislead the PTO. That proof may be rebutted by a showing that: (a) the prior art or information was not material (e.g., because it is less pertinent than or merely cumulative with prior art or information cited to or by the PTO); (b) if the prior art or information was material, a showing that applicant did not know of that art or information; (c) if applicant did know of that art or information, a showing that applicant did not know of its materiality; (d) a showing that applicant's failure to disclose art or information did not result from an intent to mislead the PTO.

Thus, a balancing of overlapping considerations is involved in determining, in view of all the circumstances, the presence or absence of inequitable conduct. The level of materiality may be high or low. Applicant must be chargeable with knowledge of the existence of the prior art or information, for it is impossible to disclose the unknown. *Cf. American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1362, 220 USPQ 763, 772 (Fed.Cir.) (no duty to search), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). Similarly, an applicant must be chargeable with knowledge of the materiality of the art or information; yet an applicant who knew of the art or information cannot intentionally avoid learning of its materiality through gross negligence, i.e., it may be found that the applicant "should have known" of that materiality.[9]

---

7. That we deem unnecessary a detailed discussion of the district court's evaluation of the Q–1064 proposal, the Beduhn speech, and the on-sale evidence as nonmaterial does not in any sense suggest either the presence or absence of error of either fact or law in that evaluation. Though inequitable conduct involves a balancing of materiality and intent, *J.P. Stevens,* 747 F.2d at 1560, 223 USPQ at 1092, and an overwhelming showing of materiality plus applicant's knowledge of that materiality may raise an inference of intent so strong as to require a convincing showing of subjective good faith to offset it, no such overwhelming showing of materiality and knowledge of materiality was made here by FMC. Indeed, the district court refused to find either materiality or knowledge of materiality.

8. "Applicant" as used here includes the patentee and the attorney who prosecuted the application that resulted in the patent-in-suit, because the knowledge and actions of applicant's attorney are chargeable to applicant. *See Argus Chem. Corp. v. Fibre Glass–Evercoat Co.,* 759 F.2d 10, 14–15, 225 USPQ 1100, 1103–04 (Fed.Cir.), *cert. denied,* 474 U.S. 903, 106 S.Ct. 231, 88 L.Ed.2d 230 (1985).

9. In *J.P. Stevens,* 747 F.2d at 1560, 223 USPQ at 1092, "gross negligence" was seen as occurring when a reasonable person "should have known of the materiality of a withheld reference." Inequitable conduct was found, but "gross negligence" alone was not described as mandating a finding of intent to mislead. On the contrary,

Considerations touching materiality and applicant's knowledge thereof overlap those touching applicant's intent because of inferences of intent that may be drawn from the former; yet intent is a question of fact, *KangaROOS U.S.A., Inc. v. Caldor, Inc.,* 778 F.2d 1571, 1573, 228 USPQ 32, 33 (Fed.Cir.1985), and an applicant who knew or should have known of the art or information, and of its materiality, is not automatically precluded thereby from an effort to convince the fact finder that the failure to disclose was nonetheless not due to an intent to mislead the PTO; i.e., that, in light of all the circumstances of the case, an inference of intent to mislead is not warranted.[10] No single factor or combination of factors can be said always to *require* an inference of intent to mislead; yet a patentee facing a high level of materiality and clear proof that it knew or should have known of that materiality, can expect to find it difficult to establish "subjective good faith" sufficient to prevent the drawing of an inference of intent to mislead. A mere denial of intent to mislead (which would defeat every effort to establish inequitable conduct) will not suffice in such circumstances. Nonetheless, when, as here, the district court finds, on all the evidence, that an applicant had no knowledge of materiality, that that lack of knowledge was not due to gross negligence, and that applicant had no intent to mislead the PTO, the burden on an appellant attempting to overturn those findings is not met by mere argument that undisclosed art or information known to the applicant was material.

FMC says the district court's refusal to infer an intent means the court was insisting on a "smoking gun" or an outright confession and, despite the court's reference to "gross negligence," FMC says it did not apply a "should have known" test. The contrary is true. Judge Hart cited and applied the guidance on the law set forth in

the precedents of this court on the issue and reached his determination only after he found: the testimony of FMC witness Van de Hey incredible; Randolph did give the PTO what was understood to be the prior art; neither Randolph nor Beduhn believed the Q–1064 proposal and Beduhn speech were "printed publications" describing the invention or that a Ringer could be "on sale" before it came into existence; Butterworth's deal was not and was not seen as an offer for sale; and the first Ringer was assembled, tested, and significantly modified after the critical date.

Rule 52(a) applies to those findings, and their correctness is not challenged by FMC. They cannot be overturned by merely asserting legal error in the refusal to infer intent from FMC's own and different version of the documentary and on-sale evidence or from the opinion of its expert which the district court, who saw and heard the witnesses, was entitled to reject in favor of other evidence. *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574–75, 105 S.Ct. 1504, 1512–13, 84 L.Ed.2d 518 (1985).

FMC's effort to sidestep Rule 52(a) on the intent issue assumes there were no findings thereon subject to the Rule and confuses two quite different things: (1) impermissibly using an inference to establish a fact; and (2) permissibly drawing an inference from an already established fact. *See* 10 J. Moore & H. Bendix, *Moore's Federal Practice* § 301.03[1] (2d ed. 1987) ("From proof of a certain fact or facts it may be logical to conclude that another fact does or does not exist. The conclusion is reached by inference, which involves only reason and experience."). FMC would, for example, have the court infer the ultimate fact that Randolph intentionally withheld from the PTO a printed publication describing the invention. The district court determined, based on all the testimony at trial, that Randolph did not believe

---

the court was careful to point out that *no* evidence of subjective good faith was adduced to offset gross negligence.

**10.** In *J.P. Stevens* and in *Driscoll v. Cebalo,* 731 F.2d 878, 221 USPQ 745 (Fed.Cir.1984), appli-

cants unsuccessfully asserted that their failure to disclose was acceptable because it was based on their own particular claim interpretations which in turn rendered the withheld references nonmaterial.

the document was a printed publication describing the invention. Unable or unwilling to attack that determination as clearly erroneous, FMC argues, in effect, that the law required the court to have drawn from a fact (the document) a first "inference" that it was what FMC's witnesses said it was, i.e., a printed publication under § 102(b); a second "inference" that Randolph knew it was such; and a third "inference" that Randolph intentionally or with gross negligence withheld it from the PTO. An inference can and often must be drawn from established facts and direct proof of wrongful intent is not required, but drawing an inference on an inference on an inference is not the role of the fact finder.[11]

■ On the intent issue, as on others in its brief, FMC misperceives the roles of fact and law in the judicial process. That a finding cannot stand if reached through improper application of a legal standard governing the fact finding function, *Pullman–Standard v. Swint*, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); *Panduit Corp. v. Dennison Manufacturing Co.*, 810 F.2d 1561, 1567–68, 1 USPQ2d 1593, 1597 (Fed.Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987), does not mean that a legal conclusion can exist in a vacuum. Established facts (undisputed or correctly found) lead to legal conclusions, not the other way round.[12] Moreover, findings must be viewed in their entireties. FMC's argument that legal error occurred in determining that certain documents were not material prior art, for example, is simply irrelevant to the challenge of the above-quoted finding of no intent to deceive, which finding was expressly premised on an assumption that the documents *were* "pertinent prior art." [13]

The district court committed no error, of either fact or law, in concluding:

> FMC has failed to demonstrate, by clear and convincing evidence, that Manitowoc engaged in "inequitable conduct" in the prosecution of the application for the Beduhn '383 patent.[14]

654 F.Supp. at 935, 2 USPQ2d at 1983.

### (2) Antitrust

Judge Hart fully delineated his conclusions in respect of FMC's antitrust claims in segments devoted to: (1) Section 1 of the Sherman Act, 15 U.S.C. §§ 1–7 (Act); (2) *Walker Process;* and (3) Section 2 of the Act. FMC abandoned on appeal its § 1 claim. FMC's failure to establish inequitable conduct precludes a determination that it had borne its greater burden of establishing the fraud required to support its *Walker Process* claim. Because the patent was not fraudulently procured, FMC's extended attack on Judge Hart's findings and conclusions on the relevant market and monopoly power elements of a § 2 violation, and Manitowoc's correspondingly extended defense thereof, are irrelevant.

### (a) "Walker Process"

In *Korody–Colyer Corp. v. General Motors Corp.*, 828 F.2d 1572, 1578, 4 USPQ2d 1203, 1207 (Fed.Cir.1987); *Argus Chemical*

---

11. FMC says legal error is evidenced by Judge Hart's statement that "a determination of 'inequitable conduct' may not be based on inferences," 654 F.Supp. at 934, 2 USPQ2d at 1983, yet the statement is absolutely accurate. This court has held that one attempting to establish "inequitable conduct" must meet a "clear and convincing" standard. *J.P. Stevens*, 747 F.2d at 1559, 223 USPQ at 1092.

12. As Judge Rich said in *In re Ruscetta*, 255 F.2d 687, 689, 118 USPQ 101, 103 (CCPA 1958):

> [U]ndue liberties should not be taken with court decisions, which should be construed in accordance with the precise issue before the court, and ... a fertile source of error in patent law is the misapplication of a sound legal principle established in one case to another case in which the facts are essentially different and the principle has no application whatsoever.

13. FMC's argument that Judge Hart erred in not applying inequitable conduct standards to individual claims is rendered superfluous by the finding of no intent even if the documents were pertinent prior art.

14. Judge Hart decided the present case and *Hemstreet v. Burroughs Corp.*, 2 USPQ2d 1001 (N.D.Ill.1987) [Available on WESTLAW, 1987 WL6407] on the same day. In the latter, he granted summary judgment of patent unenforceability on the ground of inequitable conduct, applying the law to a different *factual* foundation.

*Corp. v. Fibre Glass–Evercoat Co.*, 812 F.2d 1381, 1384–85, 1 USPQ2d 1971, 1973–74 (Fed.Cir.1987); and *American Hoist*, 725 F.2d at 1368, 220 USPQ at 777, this court noted the distinction between inequitable conduct that can lead to a declaration of patent unenforceability and fraud that can lead to antitrust damages under the *Walker Process* rationale. In *Korody–Colyer*, 828 F.2d at 1578, 4 USPQ2d at 1207, those seeking unenforceability were seen as raising a shield and those seeking antitrust damages as unsheathing a sword. FMC broke its *Walker Process* sword when it failed to establish inequitable conduct.

#### (b) Section 2

█ The parties appear from the briefs to have recognized that the relevant market and monopoly power elements of a § 2 violation would come into play only after it has been determined that Manitowoc has knowingly attempted to enforce a fraudulently obtained patent. There is no relationship between the antitrust laws and Manitowoc's patent, if the patent were valid, properly procured, and enforced. The parties on appeal devote major segments of their briefs to the § 2 relevant market and monopoly power elements, but say nothing of any nonpatent charge of improper, nefarious, or illegal monopoly-seeking conduct of Manitowoc.[15] Similarly, there is no indication in the briefs or the record that the interest sought to be protected by the antitrust laws, i.e., the welfare of the consumer, was adversely affected by anything Manitowoc did.[16] Because FMC failed to establish the fraud required by *Walker Process*, there is no need to discuss either Judge Hart's findings and conclusions on

the relevant market and monopoly power elements of a § 2 violation or FMC's legal error assertions and Manitowoc's refutation of those assertions.[17]

#### (3) Unfair Competition

Having found and concluded that FMC had not prevailed on any theory of federal law, Judge Hart correctly deemed it unnecessary to discuss FMC's state law claim of unfair competition. FMC based that claim on patent invalidity and inequitable conduct and carried its burden on neither. FMC nonetheless asks this court, even if we agree with the district court on those issues, to order a new trial to determine whether Manitowoc unfairly competed "by pursuing its frivolous infringement charge." As above indicated, the infringement charge was not frivolous. FMC says remand for new trial is required because Judge Hart never decided whether the infringement charge was frivolous. The argument fails because Judge Hart necessarily made that decision when he denied FMC's request for attorney fees, a request based on the assertion that the infringement charge was frivolous.[18]

### CONCLUSION

FMC having failed to show error justifying or mandating a new trial, the judgment parts appealed from must be affirmed.

AFFIRMED.

BALDWIN, Senior Circuit Judge, concurs in the result.

---

**15.** FMC says, without record citation, that, even if the patent were not procured by fraud, Manitowoc asserted it in bad faith after learning that it was invalid. In view of its holding of validity and absence of inequitable conduct, the district court properly ignored the assertion.

**16.** Mere procurement of a patent, whatever the conduct of the applicant in the procurement, cannot without more affect the welfare of the consumer and cannot in itself violate the antitrust laws. *See generally* R. Bork, *The Antitrust Paradox* 50–51 (1978); W. Bowman, *Patent and Antitrust Law* 1, 2–3, 14 (1973).

**17.** As with other issues not requiring discussion, see *supra* note 7, the absence of discussion sug-

gests neither the presence nor absence of error of either fact or law in the district court's findings and conclusions on relevant market and monopoly power.

**18.** "It is allowable to reason back from a judgment to the basis on which it stands, 'upon the obvious principle that, where a conclusion is indisputable and could have been drawn only from certain premises, the premises are equally indisputable with the conclusion.'" 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.443[4] at 776 (2d ed. 1984), quoting *Burlen v. Shannon*, 99 Mass. 200, 203 (1868).