979 F.2d 216
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
PENTECH INTERNATIONAL, INC., Plaintiff-Appellant,
v.
Leon HAYDUCHOK, All-Mark Corporation, Inc. and Paradise
Creations, Inc., Defendants-Appellees.
 No. 92-1172.
 United States Court of Appeals, Federal Circuit.
 Sept. 11, 1992.
Rehearing Denied; Suggestion for Rehearing In Banc
Declined Nov. 18, 1992.
 
 Before MAYER, MICHEL and LOURIE, Circuit Judges.
 PER CURIAM.
 
 
 1
 The judgment of the United States District Court for the Southern District of New York, No. 87-7233 (May 20, 1991), that U.S. Patent 4,681,471 is not invalid or unenforceable and that the accused marker kits infringe claims 1, 12, 16, 26, and 31 of the patent, is affirmed.
 
 
 2
 The invention described in the '471 patent relates to a kit of colored marking devices, such as pens or markers, in combination with a single eradicator for removing marks without leaving stains or harming fabrics. The infringement issue centers around the interpretation of independent claim 1, which requires, inter alia, "means comprising a plurality of devices capable of producing a series of rainbow-colored marks or imprints, including at least each of the primary colors red, yellow and blue...."* In interpreting this limitation, the trial court held that:
 
 
 3
 The limitation does not specify that the kit be capable of producing a red mark, a yellow mark and a blue mark. It rather requires that the kit of erasable markers must make marks that "include" red, yellow and blue. (This limitation requires an eradicating fluid capable of eradicating all three.) There is no requirement, however, that the red, yellow and blue be presented in a single marker in pure, unmixed form. [Emphasis in original.]
 
 
 4
 To the contrary, Pentech insists that proper interpretation of the limitation requires separate red, yellow, and blue markers in an infringing kit.
 
 
 5
 The limitation at issue includes the phrase "including at least each of the primary colors red, yellow and blue." Pentech argues that because this phrase is modified by the words "a series of rainbow-colored marks," the series of marks must include red, yellow, and blue marks. This reading, however, places undue emphasis on the word "series." The proper construction of claim 1 is the trial court's reading that the phrase "including at least each of the primary colors red, yellow and blue" modifies the word "marks," thus requiring that marks "include" red, yellow, and blue. Accordingly, the claim language, in itself, does not establish Pentech's suggested interpretation. Indeed, it undermines Pentech's suggestion. Claim 1 states, inter alia, "means comprising a plurality of devices capable of producing a series of rainbow-colored marks or imprints, including at least each of the primary colors red, yellow and blue, each of said devices including a reservoir of a different colored water-based fluid...." (Emphasis added.) The highlighted portion supports the trial court's construction of the claim because, if the first use of the word "including" referred to the "devices" and thereby required a yellow device (as is implied in Pentech's argument that one of the series of marks must be yellow alone), there would be no need to add the words "each of said devices" in the phrase that follows. Thus, if Pentech were correct, the claim language would read "means comprising a plurality of devices capable of producing a series of rainbow-colored marks or imprints, including at least each of the primary colors red, yellow and blue, and including...." The fact that, instead, the patentee started the next phrase with "each of said devices" leads to the conclusion, therefore, that the first use of "including" does not refer to "devices" but, rather, refers to the marks or imprints, just as the trial court found.
 
 
 6
 Pentech contends that the district court failed to analyze the specification, drawings, and file wrapper in interpreting the scope of the claims and in limiting the claims "to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." See 35 U.S.C. § 112 p 6 (1988). It asserts that proper consideration of these items dictates its interpretation of the disputed limitation. Regarding the specification and drawings, Pentech states:
 
 
 7
 Fig. 1 of the '471 patent illustrates a kit containing yellow, brown, black, purple, red, pink, orange, blue and green markers (2-10). These are respectively capable of making yellow, brown, black, purple, red, pink, orange, blue and green marks. The specification refers to the marks made by these markers as "a plurality of different colors of the rainbow" (A94, col. 1, lines 19, 44 and 60). The specification further states at col. 1, lines 61-66, "In accordance with the present invention, the latter (eradicator dispenser) contains an eradicating fluid which is chemically formulated to substantially uniformly neutralize and render substantially colorless the marks made by each of the multi-colored dispensers of the kit ..." (emphasis added). The word "mark" is defined as the mark made by the fluid dispensers numbered 2-10 (col. 4, lines 29-31). It is accordingly clear from the specification that the entire mark made by each dispenser, and not only a part, be eradicated by the eradicator fluid. [Emphasis in original.]
 
 
 8
 While we fully agree that the entire mark made by each dispenser must be fully eradicated by the eradicator fluid,** this in no way supports Pentech's proposed interpretation of the disputed limitation. And the fact that the embodiment illustrated in figure 1 includes separate red, yellow, and blue markers does not require their presence in an infringing kit; what is patented is not confined to examples disclosed in the specification. See Specialty Composites v. Cabot Corp., 845 F.2d 981, 987, 6 USPQ2d 1601, 1604 (Fed.Cir.1988). Nothing identified in the specification or drawings supports Pentech's suggestion that separate red, yellow, and blue markers are required in an infringing kit.
 
 
 9
 As for the prosecution history, Pentech points to a supplemental amendment, dated September 19, 1986, presenting an amended claim 1, where in the remarks section the applicant states:
 
 
 10
 In accordance with the Examiner's suggestion, Claim 1 has now been amended (second paragraph) to read:
 
 
 11
 "... means comprising a plurality of devices capable of producing a series of rainbow-colored marks or imprints n at least the primary colors red, yellow, and blue ..." [Emphasis added.]
 
 
 12
 Had this limitation appeared in issued claim 1, it unquestionably would support Pentech's assertion that separate red, yellow, and blue markers are required in an infringing kit. The phrase "in at least," however, is an apparent misquotation by the applicant of the actual amended claim ("including at least"), never to reappear in the prosecution history or in the claims as allowed. Because the phrase "in at least" is not part of claim 1 as allowed, its existence adds nothing to our interpretation of claim 1.
 
 
 13
 35 U.S.C. § 112 p 6 (1988) requires that the scope of a claim element expressed in means-plus-function form be limited "to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." In other words, for literal infringement, the means-plus-function language must read on the accused device and the structure of the accused device must be the same as that described in the specification, or a structural equivalent. See Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1536, 19 USPQ2d 1367, 1370 (Fed.Cir.1991). In this case the disputed limitation, "means comprising a plurality of devices capable of producing a series of rainbow-colored marks or imprints, including at least each of the primary colors red, yellow and blue," is shown in the specification as a collection of colored markers. The structure of the accused kit mirrors that disclosed in the specification. Accordingly, Pentech's argument that the district court failed to properly limit the claims is without merit.
 
 
 14
 After thoroughly reviewing the prior art and the district court's opinion in light of Pentech's arguments, we discern no reversible error in the holding on validity. And because Pentech identifies no evidence establishing that the applicants intentionally misled the Patent and Trademark Office by failing to disclose material information known during prosecution, see FMC Corp. v. Manitowoc Co., 835 F.2d 1411, 1415, 5 USPQ2d 1112, 1115 (Fed.Cir.1987), we are not persuaded that the district court abused its discretion in declining to find inequitable conduct. See Kingsdown Medical Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988).
 
 
 15
 LOURIE, Circuit Judge, dissenting-inpart.
 
 
 16
 I respectfully dissent from the panel's holding of infringement. I believe that the district court's determination as to the scope of claim 1 was erroneous as a matter of law.
 
 
 17
 An examination of the prosecution history of the '471 patent establishes that the patentee excluded from his claims kits that are not capable of producing a mark of the color yellow. During prosecution of the '471 patent, the patentee amended claim 1 to add the limitation "including at least each of the primary colors red, yellow, and blue." As the district court recognized, the patentee added that limitation in order to "distinguish [the claimed invention from] prior patents which disclosed methods to eradicate blue and red inks only."
 
 
 18
 The district court, however, concluded that the claim reads on a product that is capable of producing a mark wherein the color yellow is used either in pure form or in combination with other primary colors. That overly broad interpretation of claim 1 is contrary to the express terms of the claim. The term "yellow" must be construed to mean essentially pure yellow, as opposed to yellow mixed with a sufficient amount of another color so that it ceases to be yellow. The term simply means what it says: yellow is yellow, not green or orange.
 
 
 19
 In attempting to avoid a key limitation of claim 1, Pentech ought to have been able to rely upon both the clear language of that claim and upon the amendment that resulted in its eventual allowance. Pentech's accused kit is not capable of producing a mark of the color yellow within the meaning of claim 1. Although an accused infringer cannot be allowed to make an insubstantial change that essentially misappropriates a patented invention, he should be able to rely on the language of the patent claims to avoid infringement. London v. Carson Pirie Scott & Co., 946 F.2d 1534, 1538, 20 USPQ2d 1456, 1458 (Fed.Cir.1991). Pentech here did just that, and I believe that the district court erred when it failed to so conclude.
 
 
 
 *
 Claim 1, in its entirety, reads:
 
 
 A
 coloring kit which comprises in combination:
 means comprising a plurality of devices capable of producing a series of rainbow-colored marks or imprints, including at least each of the primary colors red, yellow and blue, each of said devices including a reservoir of a different colored water-based fluid consisting essentially of a common carrier solution composed essentially of 70-100% deionized water and from 0-30% glycols; a non-ionic wetting agent in concentrations of from about 0.125 to 0.25% by weight of said carrier solution; an antioxidant in concentration of from about 0-7% by weight of said carrier solution, and predetermined dye-stuffs in concentrations from about 0.125 to 3.25% by weight of said carrier solution; marking or stamping means operable in collaboration with each said reservoir of colored water-based fluid to produce a discernible colored mark on a smooth substrate; means comprising a single eradicator fluid formulated to eradicate any and all of the colors of said rainbow-colored marks or imprints produced by said marking devices, said eradicator means comprising a reservoir of a water-based eradicator fluid consisting essentially of about 65-95% of said common carrier solution, about 5-35% reducing agent and about 0.125 to 0.25% wetting agent; marking or stamping means operable in collaboration with said reservoir of said eradicator to produce an imprint of eradicator fluid on said smooth substrate; wherein said eradicator fluid is so formulated that upon application to said discernible colored marks said eradicator will remove the color therefrom without removing the color from or substantially staining the substrate.
 
 
 **
 This limitation is explicitly included in claim 1, which requires "means comprising a single eradicator fluid formulated to eradicate any and all of the colors of said rainbow-colored marks or imprints produced by said marking devices...."