64 F.3d 671
 36 U.S.P.Q.2d 1271
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
INSULTHERM, INC., Plaintiff-Appellant,
v.
TANK INSULATION INTERNATIONAL, INC., Defendant-Appellee.
 No. 94-1378.
 United States Court of Appeals, Federal Circuit.
 April 25, 1995.
 
 VACATED.
 Before MICHEL, Circuit Judge, SKELTON, Senior Circuit Judge, and RADER, Circuit Judge.
 DECISION
 RADER, Circuit Judge.
 
 
 1
 Insultherm, Inc. sued Tank Insulation International, Inc. (TII) for infringement of Insultherm's U.S. Patent No. 4,534,490 (the '490 patent). Insultherm also sued TII for unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. Sec. 1125 (1988). The district court found the '490 patent unenforceable due to inequitable conduct during prosecution and dismissed Insultherm's infringement claim. Insultherm, Inc. v. Tank Insulation Int'l, Inc., No. 93-CV-558 (S.D.Tex. June 13, 1994). The district court also dismissed the section 43(a) claim because Insultherm did not meet its burden of proof. Id. Because the district court abused its discretion in holding the '490 patent unenforceable and prematurely dismissed Insultherm's section 43(a) claim, this court vacates and remands.
 
 DISCUSSION
 
 2
 The '490 patent discloses a system for securing insulation panels to the circular side wall of a large storage tank. Continuous pieces of strapping material, or fasteners, secure the panels to wire cables encircling the tank's sidewall. The patent teaches a way to loop the fasteners around the cable and twist them so that the ends of the fasteners extend between side flanges of adjacent panels. The flanges and fastener ends are then folded over each other to form a water-tight double seam.
 
 
 3
 In late 1983, Mark McBride, Insultherm's president and the inventor of the '490 patent, traveled to Europe to purchase a seam folding machine. A European contractor demonstrated the machine on a piece of metal secured to a commercial roof with screws. McBride found this European method impractical for insulating tank sidewalls because it required puncturing the sidewall with screws. After unsuccessfully experimenting with wire gauge as a fastener without screws, McBride settled on strapping material as a suitable fastener. McBride then hired Robert Marett, a former patent examiner, to prosecute the '490 patent. The '490 patent issued on August 13, 1985.
 
 
 4
 In September 1993, Insultherm sued TII for infringement of claims 1, 2, 7, and 8 of the '490 patent and for violating section 43(a) of the Lanham Act. Insultherm alleged that TII misrepresented the origin of the tank insulation work depicted in TII's sales brochures. Insultherm contended that TII's brochures included photographs of Insultherm's work.
 
 
 5
 On the second day of trial, before the close of Insultherm's case, the district court rendered judgment from the bench under Fed.R.Civ.P. 52(c) (Rule 52(c)). The district court declared the '490 patent unenforceable due to inequitable conduct and dismissed Insultherm's infringement claim. The district court also dismissed Insultherm's section 43(a) claim and denied its request for attorney fees. After receiving proposed findings of fact and conclusions of law from TII's counsel, the district court entered final judgment. Insultherm appeals.
 
 I.
 
 6
 Patentees, and their patent attorney or agent, must prosecute patent applications before the Patent and Trademark Office (PTO) with candor, good faith, and honesty. See Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 818 (1945). Withholding material prior art from the PTO with intent to deceive constitutes inequitable conduct. Kingsdown Medical Consultants, Ltd. v. Hollister, Inc., 863 F.2d 872, 876, 9 USPQ2d 1384, 1389 (Fed.Cir.1988), cert. denied, 490 U.S. 1067 (1989). To prevail at trial, a party alleging inequitable conduct must prove by clear and convincing evidence: (1) the materiality of the nondisclosed prior art, (2) knowledge chargeable to the patentee of the prior art and its materiality, and (3) intent by the patentee to mislead the PTO. FMC Corp. v. Manitowoc Co., 835 F.2d 1411, 1415, 5 USPQ2d 1112, 1115 (Fed.Cir.1987). The court then must determine, in light of all the circumstances, whether the patentee's conduct warrants a finding of inequitable conduct. LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n, 958 F.2d 1066, 1070, 22 USPQ2d 1025, 1028 (Fed.Cir.1992). The district court concluded that TII met its burden of proof and declared the '490 patent unenforceable.
 
 
 7
 This court reviews a district court's ultimate determination of inequitable conduct for an abuse of discretion. Kingsdown, 863 F.2d at 872. To determine if the district court abused its discretion, this court asks whether the subsidiary factual findings of materiality and intent are clearly erroneous. Id.; Amgen, Inc. v. Chugai Pharmaceutical Co., 927 F.2d 1200, 1215, 18 USPQ2d 1016, 1028 (Fed.Cir.), cert. denied, 502 U.S. 856 (1991). This court will not disturb those findings "absent a definite and firm conviction that a mistake has been made." Kingsdown, 863 F.2d at 872.
 
 
 8
 Although the level of intent required varies inversely with the materiality of the nondisclosed prior art, N.V. Akzo v. E.I. DuPont de Nemours, 810 F.2d 1148, 1153, 1 USPQ2d 1704, 1708 (Fed.Cir.1987), the contesting party must make a threshold showing of intent even in cases involving a high level of materiality. Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544, 551, 16 USPQ2d 1587, 1592 (Fed.Cir.1990). The district court found that TII met its burden by showing that McBride intentionally withheld from the (PTO) his knowledge of: (1) European seam-folding equipment, (2) the use of continuous metal straps in the roof insulation art, and (3) a Thermacon storage tank roof insulation system shown in a 1981 drawing. This court must examine each of these instances of nondisclosure for evidence of intent to deceive the PTO.
 
 
 9
 McBride admitted that he learned of double-folded standing seam technology on a trip to Europe. McBride's patent attorney, Marett, testified that McBride informed him about the European seam-folding machines. Marett included sketchy information about these European machines in the '490 application. Marett did not include more information because he understood that these machines were well known and did not require fuller explanation. Moreover, Marett considered the seam-folding machines of very marginal materiality for McBride's invention. Marett viewed sidewall insulation systems as distinct from the European roofing insulation systems.
 
 
 10
 At most, this record shows gross negligence by Marett, which alone does not prove an intent to deceive. "Gross negligence does not of itself justify an inference of intent to deceive." Halliburton Co. v. Schlumberger Tech. Corp., 925 F.2d 1435, 1442, 17 USPQ2d 1834, 1841 (Fed.Cir.1991). Negligent conduct may support an inference of intent only when all the evidence, including evidence of good faith, reveals conduct culpable enough to require a finding of intent. Id. at 1443.
 
 
 11
 Marett's conduct, in view of all the evidence, does not show culpability. Marett disclosed all he thought was required about the European machines. Significantly, in its 52(c) ruling from the bench, the district court found Marett lacked culpable intent. Moreover, Insultherm produced evidence of McBride's and Marett's good faith attempt to fully disclose material prior art to the PTO. McBride testified that he provided Marett with all available information, including the closest pieces of prior art--U.S. Patent No. 4,122,640 disclosing a vertical panel system for insulating storage tanks, and a 1982 Thermacon brochure. Marett corroborated this testimony. Marett disclosed the '640 patent to the PTO as the closest prior art, but testified that he did not find the 1982 brochure relevant because McBride's invention differed and the brochure lacked sufficient detail. In sum, Marett's conduct does not support an inference of intent. Thus, the district court clearly erred in finding an intent to deceive based on incomplete disclosure of the European seam-folding technology.
 
 
 12
 The district court also relied on McBride's failure to adequately disclose the use of strapping material as fasteners in the roof insulation art. McBride knew the insulation trade used strapping material as "typical insulator's attachment piece[s]" or "fasteners." However, although McBride had done roofing insulation work before filing his application, no evidence shows that McBride knew of the use of strapping material as fasteners in those roofing systems. McBride testified that, on his 1983 European trip, he saw strapping material used as fasteners on a commercial roof--in a different structural context than needed for storage tank roofs. Upon his return, McBride continued experimenting with a wire material as a fastener. After several failed attempts, he switched to strapping material as a fastener. McBride succeeded with the strapping material and filed his application in 1984. McBride testified that he first saw metal strap fasteners used with Thermacon's roof system in 1986, after issuance of the '490 patent. Thus, the district court clearly erred in finding that McBride knew strapping material "had been in common use in the roof insulation art for many years as an attachment device." (Emphasis added).
 
 
 13
 In any event, both McBride and Marett believed the roofing insulation art to be of, at most, marginal relevance to the sidewall insulation art. McBride told Marett that strapping material had been used in varied applications, but not in the unique context of insulating storage tank sidewalls. Marett decided against disclosing these other applications. Marett's conduct may show an error in judgment, even one amounting to gross negligence. But this alone does not evince an intent to deceive. See Halliburton, 925 F.2d at 1442-43; Molins PLC v. Textron Inc., 1995 U.S.App. LEXIS 2959, at * 24, 33 USPQ2d 1823, 1829 (Fed.Cir.1995). Thus, as to McBride's failure to disclose the use of strapping material to secure roof insulation panels, this record does not contain sufficient evidence of intent to deceive the PTO. The district court clearly erred in finding such intent.
 
 
 14
 Finally, the district court found that McBride knew of and withheld the contents of the 1981 drawing. The key issue here is whether McBride knew about Thermacon's system as shown in the 1981 drawing at the time of the '490 prosecution. The party alleging inequitable conduct must show a patentee's knowledge of the undisclosed art because a patentee cannot disclose what is unknown to him. See FMC, 835 F.2d at 1415. The district court imputed knowledge to McBride based on: the structural similarity of the 1981 drawing and the '490 patent; a passing lunch conversation between McBride and a Thermacon representative in January 1984; Thermacon's prominence in the field; and a patent cross-license between Insultherm and Thermacon. This court must decide whether the circumstances relied upon by the trial court support its finding of knowledge and intent to deceive.
 
 
 15
 The structural similarity between the claimed invention and the 1981 drawing does not prove McBride had knowledge of the drawing. Two inventors working independently may conceive very similar inventions, particularly where the field of technology desperately needs the advance. The lengthy history of interference practice in this country testifies to this phenomenon. Moreover, McBride testified that he did not know of the Thermacon system until 1986, and had no knowledge of the 1981 drawing until 1989, four years after the issuance of the '490 patent.
 
 
 16
 The random lunch encounter with a Thermacon representative also does not show McBride had knowledge of Thermacon's system. McBride explained that their short conversation at a chance meeting did not produce any information about technology. In fact, McBride testified that, even after the conversation, he continued to experiment with other materials as fasteners, such as weld pins and hard mesh.
 
 
 17
 The cross-license also does not support an inference of knowledge. McBride testified that Insultherm entered into the patent cross-license in 1992, seven years after issuance of the '490 patent, for legitimate business reasons. The cross-license permitted Thermacon to use Insultherm's patented system and Insultherm to use Thermacon's patented horizontal side wall system. The absence of exchanged royalties or royalty reports does not evince an intent to deceive. The parties simply agreed to postpone royalty payments until resolution of the TII litigation.
 
 
 18
 In the long run, the district court did not credit McBride's testimony. However, the district court cannot rely solely on a credibility determination to find a fact directly opposite to uncontroverted testimony. Moore v. Chesapeake & Ohio Ry., 340 U.S. 573, 576-77 (1951). McBride's uncontroverted testimony indicates no knowledge of Thermacon's system. Thus, the district court clearly erred in finding intent to deceive based on McBride's purported knowledge and nondisclosure of Thermacon's system.
 
 
 19
 This court recognizes that direct evidence is not always available to prove intent. See, J.P. Stevens & Co. v. Lex Tex. Ltd., 747 F.2d 1552, 1560, 223 USPQ 1089, 1092 (Fed.Cir.1984), cert. denied, 474 U.S. 822 (1985). This record, however, simply does not contain enough circumstantial evidence to support an intent to deceive the PTO. The district court may ultimately find inequitable conduct after the parties present further evidence. However, at this stage of the proceedings, the district court clearly erred in concluding that TII has shown the requisite clear and convincing proof of intent to deceive. Thus, the district court abused its discretion in finding inequitable conduct. This court vacates the district court's 52(c) ruling of inequitable conduct and remands for further proceedings.
 
 II.
 
 20
 Rule 52(c) permits a judge to enter judgment on partial findings once "a party has been fully heard on an issue." Id. "A judgment on partial findings is made after the court has heard all the evidence bearing on the crucial issue of fact...." Id., Advisory Committee's Note (1991 Amendment).
 
 
 21
 The district court entered its 52(c) ruling denying Insultherm's section 43(a) claim before hearing all the evidence on the claim. The district court's ruling prevented Insultherm from calling witnesses to testify about the section 43(a) claim. Insultherm identified eight witnesses on its pretrial order, yet only had the opportunity to call four. Moreover, the district court could not, on the record facts, make a Rule 52(c) determination as to the section 43(a) claim. The district court found that TII "had adequate connection with the photographs" to justify TII's use of them in its sales brochures. The district court made this determination based on the following facts. First, one of TII's principals, Charles Nelson, was associated at one time with a former licensee of the '490 patent, Delta Systems, Inc. While at Delta, Nelson manufactured and marketed panels for Insultherm. Delta manufactured the panels shown in one photograph of TII's brochure. Second, McBride's brother, John McBride, installed storage tank insulation panels for Insultherm from 1984 to 1989. John McBride, who worked for TII at the start of the litigation, installed the panels depicted in one photograph.
 
 
 22
 These facts, however, do not show that TII had adequate connection to the photographs. The Delta license was terminated in 1986 and included a contractual obligation to return all photographs to Insultherm. Insultherm did not authorize Delta or TII to use the photographs after termination of the license. Further, John McBride's activity does not insulate TII from liability if TII in fact made misrepresentations about the origin of the work.
 
 
 23
 Insultherm presented evidence supporting its section 43(a) claim. TII had shown prospective customers brochures with photographs of tanks Insultherm had insulated, without crediting Insultherm. Insultherm had not authorized use of the photographs. Prospective customers had questioned Insultherm about the connection between Insultherm and TII, signalling customer confusion. Testimony also suggested that Insultherm was damaged by TII's misrepresentations.
 
 
 24
 Thus, the district court acted prematurely in dismissing Insultherm's section 43(a) claim. This court vacates the district court's 52(c) ruling on that claim.
 
 CONCLUSION
 
 25
 Based on the record evidence, this court determines that the district court clearly erred in finding an intent to deceive the PTO during prosecution of the '490 patent. Without adequate evidence of intent, the trial court abused its discretion in dismissing for inequitable conduct. This court therefore vacates the district court's judgment that the '490 patent is unenforceable and remands. In addition, because the district court ruled prematurely on the section 43(a) claim, this court vacates the district court's judgment on that claim and remands.
 
 COSTS
 
 26
 Each party shall bear its own costs.
 
 
 27
 VACATED AND REMANDED.