**SALOMON S.A. and Salomon/North America, Inc., Plaintiffs,**

v.

**ROSSIGNOL SKI COMPANY, INCORPORATED, Skis Rossignol, S.A., Caber Italia S.p.A., Trappeur–Kerma USA, and Trappeur, Defendants.**

Civ. A. 88–246–CMW.

United States District Court,
D. Delaware.

June 22, 1989.

C. Scott Reese, of Cooch and Taylor, Wilmington, Del. (Neil F. Greenblum (argued), of Sandler & Greenblum, of counsel, Arlington, Va.), for plaintiffs.

Eduard F. von Wettberg, III, of Morris, James, Hitchens & Williams, Wilmington, Del. (Frank W. Ford, Jr., Robert Neuner, Richard S. Clark, (argued), and Robert C. Scheinfeld, of Brumbaugh, Graves, Donohue & Raymond, New York City, of counsel), for defendants.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This is an action for patent infringement involving ski boots. Plaintiffs Salomon S.A. and Solomon/North America, Inc. (collectively "Salomon") filed suit on May 17, 1988, against defendants Rossignol Ski Company, Inc., Skis Rossignol S.A., Caber Italia S.p.A., Trappeur–Kerma USA and Trappeur (collectively "Rossignol"). In its Complaint, Salomon alleges that defendants directly or contributorily infringed, or induced the infringement of, one or more claims of the eleven patents cited in the Complaint.

Presently before the Court is defendant Rossignol Ski Company, Inc.'s motion for partial summary judgment.[1] In its motion, filed December 7, 1988, Rossignol seeks to have one of the patents listed in the Complaint, United States Patent No. 4,644,671 (the "'671 patent"), declared invalid over the prior art and unenforceable because of alleged inequitable conduct before the Patent and Trademark Office ("PTO").

This Court has jurisdiction pursuant to 28 U.S.C. § 1338. For the reasons stated herein, Rossignol's motion for partial summary judgment is denied.

## I. FACTS

### A. *The '671 Patent*

The patent application that matured into the '671 patent was filed in the name of the

---

1. Also pending before the Court are motions to dismiss for lack of jurisdiction filed by Skis Rossignol S.A., Caber Italia S.p.A., Trappeur–Kerma USA and Trappeur. On October 7, 1988, a Stipulation and Order was entered suspending briefing on those motions until the conclusion of additional discovery on the issue of jurisdiction.

inventor, Klaus Walkhoff, on March 25, 1985, and was assigned to Raichle Sportschuh AG ("Raichle"). The '671 application was based on a Swiss patent application filed in Switzerland on March 30, 1984, and claimed "convention priority" under 35 U.S.C. § 119 based on the Swiss application. The PTO issued the '671 patent on February 24, 1987, and the patent was subsequently assigned to plaintiff Salomon S.A.

The '671 patent, entitled "Athletic Footwear, Especially a Ski Boot", is directed to an alpine ski boot. Specifically, the patent relates to a rear-entry ski boot having an interior pressure plate that exerts pressure inside the boot against the foot. The amount of pressure exerted by the pressure plate on the foot is controlled by an adjustable cable system mounted on the rear of the boot. According to the patent, other ski boots existing at the time of the application had similar designs using adjustable cable systems with pressure plates. '671 Patent at Column 1, lines 54–66. However, these designs were allegedly distinguishable in that the pressure plates in such boots exerted increased pressure (which could be "unpleasant or even painful") when the boots were flexed forward during skiing. *Id.* at Column 1, lines 67–68; Column 2, lines 1–2. The ski boot described in the '671 patent purports to

alleviate this condition. *Id.* at Column 2, lines 10–16.

The acknowledged ski boots are referred to as follows:

A further ski boot is known in which a cable or cables connecting a retention member with a tensioning device is guided through pivot pins pivotably connecting a rear upper portion with a shell member such that the cables cross a pivot axis of the rear upper portion (cf. Raichle Sportschuh AG Brochure "Winter 83/84", European Patent Publication No. 0,114,209 and the initially mentioned cognate U.S. patent application Ser. No. 06/563,042, filed Dec. 19, 1983)....

'671 Patent at Column 1, lines 54–62.[2]

B. *Prosecution History*

During the prosecution of the '671 patent application, the Examiner issued two substantive Office Actions. In the first Office Action, mailed September 10, 1985, the Examiner rejected the claims set forth in the application as obvious based on two alternative legal grounds. The Examiner first rejected the claims under 35 U.S.C. § 103 [3] as being unpatentable over European Patent Publication No. 0,114,209 (the "'209 patent") [4] in view of German patent application 2,907,163 (the "'163 patent application"). He stated that it would be obvious to provide the cables of the '209 patent

---

**2.** The '671 patent further states:

This guidance of the cables ensures that the force exerted by the retention member upon the foot changes not at all or at most very little during a pivoting motion of the upper portion of the ski boot and therefore also of the rear upper portion. However, experience has shown that during an extreme forward motion a pressure effect upon the foot can nevertheless arise which is unpleasant or even painful to the wearer.

'671 Patent at Column 1, lines 62–68; Column 2, lines 1–2.

**3.** 35 U.S.C. § 103 provides:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

Patentability shall not be negatived by the manner in which the invention was made. Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

**4.** The '209 patent application corresponds to the U.S. application that matured into United States Patent No. 4,539,763 (the "'763 patent"). The U.S. application that matured into the '763 patent was originally U.S. Patent Application Ser. No. 06/563,042 (the "'042 patent application"). The '042 application was copending at the PTO with the '671 application. The '763 patent ultimately issued on September 10, 1985. To summarize: the '209 patent application and the '042 patent application (which issued as the '763 patent) describe essentially the same ski boot.

with springs to allow the pressure pad to perform a forward motion as shown by the '163 patent. Plaintiffs' Appendix 71 (hereinafter "PA-___").

As an alternative basis for the rejection, the Examiner applied the "judicially created doctrine of obviousness-type double patenting".[5] PA-72. He stated that, if the '209 patent was not a proper reference, a co-pending U.S. application, Ser. No. 06/563,042 (the "'042 application"), which matured into U.S. Patent No. 4,539,763 (the "'763 patent"), would be substituted and that the claims of the '671 patent application would be rejected based on the claims of the '763 patent and the German '163 patent application. PA-72. The Examiner further stated that a "terminal disclaimer may be necessary."[6] PA-72.

In a response to the first Office Action, the '671 patent applicant argued that the Examiner's rejection of the '671 claims on the suggested combination of references was incorrect. PA-133-145. More specifically, the applicant argued that it would not have been obvious to one of ordinary skill in the art to arrive at the invention based on the art cited by the Examiner. PA-140-143. The applicant also argued that the '209 application was not a proper reference because of its date. PA-135-136.

In the second Office Action, mailed June 24, 1986, the Examiner issued a final rejec-

tion of the claims of the '671 application under the doctrine of obviousness-type double patenting. PA-190. This rejection was *not* based on the German '163 application in combination with the '209 patent or the '763 patent ('042 application), as was the previous rejection. Rather, the Examiner rejected the claims of the '671 application "as being unpatentable over the prior invention as set forth in [the claims of the '763 patent]" alone. PA-190.

In his second Office Action, the Examiner further stated:

> Although the conflicting claims are not identical, they are *not patentably distinct* from each other because the athletic footwear is structurally the same as the claimed structure of the application except for the arrangement of connecting means being arranged above and passed in closed proximity to the pivot axis. Figure 3 appear [sic] to show the connecting means 28, 29 being passed through the apertures 26, 27 and above pivot axis 9. It is inherent that pressure pad would produce a forward pivoting motion.

PA-190 (emphasis added). The Examiner again noted that a timely filed terminal disclaimer would overcome an actual or provisional rejection based on the double patenting ground. *Id.*

---

**5.** The obviousness-type double patenting rejection is a judicially created doctrine grounded in public policy rather than statute. *In re Longi,* 759 F.2d 887, 892 (Fed.Cir.1985); *Gemveto Jewelry Co., Inc. v. Jeff Cooper Inc.,* 568 F.Supp. 319, 326 n. 21 (S.D.N.Y.1983); *see generally Application of Braithwaite,* 379 F.2d 594, 601, 54 C.C.P. A. 1589 (1967) (Smith, J., concurring). The doctrine is primarily intended to prevent prolongation of monopoly by prohibiting claims in a second patent not patentably distinct from claims of a first patent. *Id.* The principle applies when an applicant seeks a patent for an invention that is not identical to that disclosed in the first patent, but merely an obvious improvement or variation thereof. *See Gemveto,* 568 F.Supp. at 326.

A rejection based on double patenting of the obviousness type is to be distinguished from a § 103 obviousness rejection. A double patenting of the obviousness-type rejection is, however, "analogous to [a failure to meet] the non-obviousness requirement of 35 U.S.C. § 103."

*In re Braithwaite,* 379 F.2d at 600 n. 4. The two types of rejection differ in that the patent principally underlying the double patenting rejection is not considered prior art. *In re Longi,* 759 F.2d at 892 n. 4. Another distinction is that, while an obviousness-type double patenting rejection may be overcome by the filing of a terminal disclaimer, a § 103 rejection may *not* be similarly overcome. *Application of Bowers,* 359 F.2d 886, 891 n. 7, 53 C.C.P.A. 1590 (1966).

**6.** An inventor may overcome a rejection for double patenting of the obviousness type and obtain a monopoly on his improvement by filing a terminal disclaimer under 35 U.S.C. § 253. *Gemveto Jewelry Co., Inc. v. Jeff Cooper Inc.,* 568 F.Supp. 319, 326 (S.D.N.Y.1983). The effect of such a disclaimer is to limit the terminal date of the subsequent (second-filed) patent, such that it is coterminous with that of the prior (first-filed) patent. *Id. See also* 37 C.F.R. § 1.321(b) (1984) (procedure for filing terminal disclaimer).

The '671 applicant did not further contest the Examiner's obviousness rejection and did not take an appeal. Instead, the '671 applicant filed a terminal disclaimer as suggested by the Examiner. PA-194-195.[7] In a statement accompanying the terminal disclaimer, the '671 applicant wrote that "the present paper is presented with the view of advancing prosecution of this application on its merits and hopefully placing this case in clear condition for acceptance." PA-202. The applicant further stated:

> Regarding the Examiner's rejection of claims 1 through 24 in the application under the judicially created doctrine of obviousness-type double patenting over the prior invention as set forth in claims 1 through 25 of [the '763 patent], applicant herewith submits a Terminal Disclaimer in compliance with 37 CFR § 1.321(b)....
>
> It is believed that by the filing of such Terminal Disclaimer, the Examiner's rejection of claims 1 through 24 is obviated and that clearly these claims should now be in clear condition for allowance.

PA-202-203. The '671 patent duly issued on February 24, 1987.

## II. ISSUE

One searches in vain through the morass that is the parties' briefing in this case for a succinct statement of the central issue. As far as the Court can distill, the controlling issue on this motion for partial summary judgment is as follows: Has Salomon come forward with sufficient countervailing evidence to rebut Rossignol's prima facie showing that Salomon acquiesced in the Examiner's determination of obviousness?

## III. SUMMARY JUDGMENT STANDARD

For Rossignol to succeed on its motion for partial summary judgment, it must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Avia Group International v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed.Cir.1988); *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1260 (Fed.Cir.1985); *Friction Division Products, Inc. v. E.I. du Pont de Nemours & Company*, 693 F.Supp. 114, 120-21 (D.Del.1988).

There existed a long-standing prejudice against summary judgment disposition in patent cases. *See, e.g.,* 10A C. Wright & A. Miller, *Federal Procedure & Practice* § 2732.1 (1983) ("[P]atent actions are by their very nature poorly suited to disposition by summary judgment."). However, with the advent of the Federal Circuit and the United States Supreme Court's 1986 trilogy of summary judgment cases,[8] courts have become more receptive to summary judgment dispostion of patent cases. *See D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144 (Fed.Cir.1983); *Chore-Time Eqipment Inc. v. Cumberland Corp.*, 713 F.2d 774 (Fed.Cir.1983).

Today, summary judgment is as appropriate in a patent case as in any other. *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed.Cir.1984). Thus, "[w]here no issue of material fact is present ... courts should not hesitate to an avoid unnecessary trial by proceeding under Fed.R.Civ.P. 56 without regard to the particular type of suit involved." *Chore-Time*, 713 F.2d at 778-79.

## IV. ANALYSIS

### A. *Validity of Patent*

Rossignol's argument for invalidity of the '671 patent focuses on the specification of the '671 patent, which discloses a "further ski boot [which] is known" and references the following: "Raichle Sportschuh AG Brochure 'Winter 83/84' ["brochure"],

---

7. The terminal disclaimer effectively shortened the normal, 17-year term of the '671 patent, such that the '671 patent will now expire on the same date as the '763 patent, September 10, 2002.

8. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed. 2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

European Patent Publication No. 0,114,209, and the initially mentioned cognate U.S. Patent Application Serial No. 06/563,042, filed December 19, 1983." '671 Patent at Column 1, lines 54–62. As noted above, the '042 application, which issued as the '763 patent, was copending with the '671 application and was assigned to the same entity that owned the '671 patent application.

In essence, Rossignol argues that Salomon (or its assignor) published, advertised and placed on sale ski boots made in accordance with the teachings of the '042 application ('763 patent) more than one year prior to March 25, 1985, the filing date of the '671 application. March 25, 1984, is thus the critical date in this analysis, under an application of 35 U.S.C. § 102(b).[9]

■ As noted above, a terminal disclaimer can, in certain limited circumstances, overcome a rejection on grounds of obviousness-type double patenting. The disclaimer effectively renders the copending application itself "not 'prior art' under the terms of section 103."[10] *Gemveto Jewelry Co., Inc. v. Jeff Cooper Inc.*, 568 F.Supp. 319, 327 (quoting *Application of Braithwaite*, 379 F.2d 594, 603, 54 C.C.P.A. 1589 (1967) (Smith, J., concurring)). However, when the teachings of an earlier-issued, commonly owned patent (e.g., as in a printed publication describing the patented technology) are statutory prior art, a terminal disclaimer *cannot* obviate a rejection based on obviousness in view of the prior art. *Gemveto*, 568 F.Supp. at 327 (citing *Application of Fong*, 378 F.2d 977, 979–980 n. 1, 54 C.C.P.A. 1482 (1967).[11] In other words, a section 103 rejection for obviousness may not be overcome by the filing of a terminal disclaimer. *Application of Bowers*, 359 F.2d 886, 892, 53 C.C.P.A. 1590 (1966). This is because the disclaimer, while effective to remove the copending application as a reference, does not remove the prior art as a reference under section 103.

For an item to be statutory prior art, it must fall within one of the categories of 35 U.S.C. § 102.[12] For example, an item will

9. For the text of 35 U.S.C. § 102(b), see *infra* note 12.

10. Although the earlier-filed, copending application is not prior art, it is the basis of the double-patenting rejection. *Application of White*, 405 F.2d 904, 906, 56 C.C.P.A. 870 (1969).

11. *Gemveto* is the chief case relied on by Rossignol. *Gemveto* was a patent infringement action involving jewelry, specifically rings. 568 F.Supp. 319, 322–23 (S.D.N.Y.1983). In *Gemveto*, the patent applicant was faced with a "double patenting [of the] obviousness type" rejection based on a copending and commonly owned application. *Id.* at 325. As in the present case, the Examiner took the position that the claims of the later ('818) application were obvious in view of the claims of the earlier ('245) application, and further noted that this rejection could be overcome by the filing of a terminal disclaimer. *Id.* at 325–26. The '818 applicant did not appeal or further contest this determination, but filed a terminal disclaimer, whereupon the '818 patent issued. *Id.* at 326.

In responding to the infringement charge and arguing that plaintiff's '818 patent was invalid, defendants asserted that, while the disclaimer had the effect of limiting the terminal date of the '818 patent, it did not overcome the fact that advertisements and actual sales of rings employing the '245 teachings occurred more than one year prior to the '818 filing date, a fact not disclosed to the examiner. *Id.* As here, defendants claimed those teachings were prior art references for purposes of judging the validity of the patent in dispute (the '818 patent). *Id.* at 326–27.

The plaintiff in *Gemveto* responded by arguing that the '818 patent was not obvious in light of the '245. *Id.* at 327. The court, however, held that the plaintiff admitted the obviousness of the later patent by filing the terminal disclaimer and was thereafter estopped from arguing otherwise. *Id.* The *Gemveto* court held that "in view of the examiner's findings and plaintiff's admissions in the file wrapper, the 818 teachings would have been obvious in light of the 245 by anyone of ordinary skill in the art." *Id.* at 328. Because the rings advertised and on sale more than one year prior to the filing of the '818 application were prior art references, the court held the '818 patent invalid under section 103. *Id.*

12. 35 U.S.C. § 102 provides, in pertinent part:

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States ...

be prior art when it is publicly known prior to the invention described in the application (35 U.S.C. § 102(a)) or patented or described in a printed publication more than one year prior to the U.S. filing date of the application in question (35 U.S.C. § 102(b)).

The brochure is the cornerstone of Rossignol's argument in this regard.[13] Salomon admits that the brochure and the '042 application ('763 patent) describe the same known ski boot.[14] Salomon Brief at 9–10. Salomon agrees that the brochure would necessarily have been published before the end of the 1983–84 winter season, and thus prior to the critical date of March 25, 1984. Salomon Brief at 39. Because of this publication date and the fact that the brochure and the '763 patent describe the same invention, Rossignol asserts that the brochure is prior art as to the '671 patent application.

Rossignol also argues that the "known" ski boot was itself on sale in this country before the critical date of March 25, 1984, thus falling within the "on sale" provision of 35 U.S.C. § 102(b) and also making the boot prior art. Rossignol bases this assumption on four advertisements in the fall 1983 editions of *Skiing* magazine. DX–H. These advertisements apparently describe the known ski boot and, Rossignol asserts, establish that the boot was on sale as early as the fall of 1983.

Rossignol's argument continues that the public sale of the known boot and the description of the known boot in the brochure prior to March 25, 1984, render the claims of the '671 patent obvious in view of the prior art and therefore invalid under section 103. According to Rossignol, this conclusion results despite the filing of the terminal disclaimer, because the disclaimer cannot overcome a rejection based on obviousness in view of the prior art.

It follows, Rossignol states, that the Examiner was misled when he allowed the '671 patent to issue after the applicant's filing of the terminal disclaimer.[15] Under Rossignol's analysis, had the Examiner been aware of the early publication date of the brochure and the fact that the known boot was on sale as early as the fall of 1983, he could not have accepted (nor suggested) the '671 applicant's terminal disclaimer.

Additionally, Rossignol asserts that Salomon, by filing a terminal disclaimer in response to the Examiner's obviousness rejection and failing to appeal that rejection, acquiesced in the Examiner's finding of obviousness. Salomon has not, argues Rossignol, introduced any countervailing evidence to overcome this prima facie showing of acquiescence, and Salomon is thus estopped, under *Gemveto* and general principles of file wrapper estoppel, from asserting that the claims of the '671 boot are not obvious in view of the prior known boot.

Salomon counters on a number of fronts. Salomon does not deny that the known ski boot was on sale prior to the critical date. Rather, it argues that the known boot was admitted to be prior art in the original '671 patent application, and that it thus is irrelevant whether the boot was described in a brochure or on sale before the critical date. Salomon also argues at length that the inventions claimed in the '671 patent would not have been obvious to one of ordinary skill in the art.

---

**13.** The Raichle brochure referred to in the '671 patent specification was in the German language. Defendants' Exhibit B1 (hereinafter "DX–__"). The same brochure was also distributed in French and in English. DX–B2; DX–C. Because these three brochures disclose the same information, albeit in different languages, they will be referred to collectively in this Opinion as the "brochure."

**14.** Salomon states that the brochure, the '209 patent and the '042 patent application are "cumulative descriptions of the known prior art boot" described in the '671 patent. Salomon

Brief at 9–10. At another point in its brief, Salomon states that the brochure discloses the known boot cited in the specification of the '671 patent. Salomon Br. at 37.

**15.** This alleged omission on the part of the '671 applicant in not informing the Examiner of the publication date of the brochure and the early distribution of the known boot underlies Rossignol's charge that the '671 patent is unenforceable due to inequitable conduct before the PTO. This issue is addressed more fully *infra* in the section titled "Inequitable Conduct".

Weighing heavily in Salomon's favor is the presumption of validity accorded a patent by 35 U.S.C. § 282.[16] *See Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 837 F.2d 1044, 1050 (Fed.Cir.1988). This presumption may be rebutted only by clear and convincing evidence. *Id.* The burden remains on the challenger throughout the case, and is not reduced when prior art that was not considered by the PTO is presented to the court. *Id.* The challenger's burden is heavy when it relies only upon prior art considered by the examiner:

> When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from [sic] their work with the level of skill in the art and whose duty it is to issue only valid patents.

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed.Cir. 1984).

Rossignol oversimplifies the issue when it asserts that, "with the exception of a single sentence [the reference to the known boot], there is no requirement that the Court even read the '671 patent". It presumes that any admissions in the file wrapper are so clear and that the facts in *Gemveto* are so analogous as to mandate a holding of invalidity here. This conclusion misreads the file wrapper and places undue reliance on *Gemveto*. As the Federal Circuit noted: "Established facts (undisputed or correctly found) lead to legal conclusions, not the other way round." *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1417 (Fed.Cir.1987). Whatever the merits of the legal conclusions in *Gemveto*, a decision from the Southern District of New York, the facts here dictate a different result.[17]

In *Gemveto*, the file wrapper left "no room to doubt that plaintiff admitted the obviousness of the later patent." 568 F.Supp. at 327. Conversely, the file wrapper from the prosecution of the '671 patent leaves considerable doubt as to what the applicant admitted. On these facts, this Court cannot conclude that the failure to appeal the Examiner's obviousness rejection, and the filing of a terminal disclaimer in response thereto, constituted an admission of obviousness.

Rossignol's legal theory certainly has some merit. No case in the Third Circuit or the Federal Circuit has squarely discussed the effect of the filing of a terminal disclaimer in these circumstances. Rossignol's estoppel argument thus turns on general principles of file wrapper estoppel.

The doctrine of file wrapper (prosecution history) estoppel precludes a patent owner in an infringement suit from obtaining a construction of a claim that would in effect resurrect subject matter surrendered during the course of proceedings in the PTO. The estoppel applies most frequently when an applicant amends or cancels claims rejected by the PTO as unpatentable in light of the prior art. Some decisions extend the doctrine to amendments entered for other purposes, and even to arguments by the applicant's attorneys. 4 D. Chisum, *Patents* § 18.05 (1988). In sum, file wrap-

---

16. That statute states in pertinent part:

A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

35 U.S.C. § 282.

17. The danger of blindly following a seemingly controlling case is illustrated by the following:

[U]ndue liberties should not be taken with court decisions, which should be construed in accordance with the precise issue before the court, and ... a fertile source of error in patent law is misapplication of a sound legal principle established in one case to another case in which the facts are essentially different....

*FMC Corp.*, 835 F.2d at 1417 n. 12 (quoting *In re Ruscetta*, 255 F.2d 687, 689, 45 C.C.P.A. 968 (1958)).

per estoppel "prevents a patentee from taking a position in the courts that contradicts the position he [or the applicant] took in the Patent Office." *Narda Microwave Corp. v. General Microwave Corp.*, 675 F.2d 542, 549 (2d Cir.1982).

■ The parties here agree that the filing of a terminal disclaimer to overcome a PTO rejection does not give rise to an irrebutable presumption of acquiescence. Rather, they rely on *Pennwalt Corp. v. Akzona, Inc.*, 740 F.2d 1573 (Fed.Cir. 1984),[18] for the proposition that such a filing creates a prima facie case of acquiescence, which a patentee may rebut by coming forward with countervailing evidence.

A finding of estoppel may be appropriate when the construction of the claim in question mutually held by the patent examiner and the applicant is at variance with the construction later relied on by the patent owner. As a general matter, the effect of the estoppel should only be commensurate in scope with the mutually held construction revealed by examination of the file wrapper. 4 D. Chisum, *Patents* § 18.05[1]. It is that "mutually held construction" which is in doubt here and which precludes the Court from holding the '671 patent invalid at this time.

Summary judgment is particularly inappropriate when there exists a genuine conflict concerning such matters as the interpetation of the file wrapper and the PTO action or the significance of the prior art. Such genuine conflicts litter the record in this case. For instance, in his final rejection of the '671 claims, the Examiner stated that "[f]igure 3 appear [sic] to show the connecting means 28, 29 being passed through the apertures 26, 27 and above the pivot axis 9." PA–190. An examination of figure 3 (of the '763 patent) reveals a diagram that shows cable 29 passing through aperture 27 on the right hand side of the boot *at* the pivot axis, and cable 28 passing through aperture 26 on the left hand side *above* the pivot axis. *See* PA–12. At oral argument on this motion, counsel suggested that this apparent inconsistency from one side of the boot to the other may be due to a drafting error in the diagram.

■ Whatever the cause of this ambiguity in figure 3, this is the very type of factual issue that precludes a summary holding of invalidity. Finding a patent invalid due to obviousness on a motion for summary judgment is a harsh result. This Court cannot find that the '671 applicant acquiesced in the Examiner's determination of obviousness when there is facial ambiguity in the Examiner's own explanation. In pointing out the ambiguity in figure 3 and convincing the Court that there is an issue as to the content and scope of any acquiescence in the Examiner's obviousness determination, Salomon has come forward with sufficient countervailing evidence to rebut Rossignol's prima facie showing of acquiescence.

### B. *Inequitable Conduct*

Rossignol charges that the '671 applicant[19] was under a duty to advise the Examiner that the brochure was published before the critical date and that the known

---

**18.** Significantly, *Pennwalt* did not involve the filing of a terminal disclaimer. Instead, it dealt with the effect of the filing of a continuation-in-part ("CIP") application. 740 F.2d at 1578. A CIP application is an application filed during the lifetime of an earlier application by the same applicant, repeating some substantial portion or all of the earlier application and adding matter *not disclosed in the earlier case. Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1437 (Fed.Cir.1984). A CIP application has the legal effect of a patent application disclosing the newly added matter. *Id.*

A patent applicant may be found to have acquiesced in a particular patent rejection by filing a CIP application to overcome the rejec-

tion. *Id.* Once a prima facie case of acquiescence is established by the party charging invalidity (by showing the filing of the CIP application), the patentee has the burden of coming forward with countervailing evidence. *Pennwalt*, 740 F.2d at 1579. The parties in the present case urge, and the Court agrees, that the *Pennwalt* doctrine applies by analogy to the filing of a terminal disclaimer.

**19.** As used here, "applicant" includes the patentee and the attorney who prosecuted the application that resulted in the patent-in-suit, because the knowledge and actions of the applicant's attorney are chargeable to the applicant. *FMC Corp.*, 835 F.2d at 1415 n. 8.

boot was on sale prior to such date. The failure of the applicant to so inform the Examiner, Rossignol argues, constitutes inequitable conduct and renders the '671 patent unenforceable.

■ A determination of inequitable conduct requires findings of materiality and intent. *Western Elec. Co. v. Piezo Technology, Inc.*, 860 F.2d 428, 433 (Fed.Cir. 1988). Thus, one who alleges a "failure to disclose" form of inequitable conduct must offer clear and convincing proof of: (1) prior art or information that is material; (2) knowledge chargeable to the applicant of that prior art or information and of its materiality; and (3) failure of the applicant to disclose the art or information resulting from an intent to mislead the PTO. *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed.Cir.1987).

Information is material where "there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." 37 C.F.R. § 1.56(a); *Western Elec.*, 860 F.2d at 433. The level of materiality may be high or low. *FMC Corp.*, 835 F.2d at 1415. The applicant is chargeable with knowledge of the existence and materiality of the prior art or information. *Id.* An overwhelming showing of materiality plus the applicant's knowledge of that materiality may raise an inference of intent so strong as to require a convincing showing of subjective good faith to offset it. *Id.* n. 7.

Materiality and intent are factual issues. *J.P. Stevens & Co. v. Lex Tex Ltd., Inc.*, 747 F.2d 1553, 1562 (Fed.Cir.1984). If the facts of materiality or intent are reasonably disputed, the issue is not amenable to summary disposition. *Baker Oil Tools, Inc. v. Geo Vann, Inc.*, 828 F.2d 1558, 1566 (Fed.Cir.1987); *Kangaroos U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1577 (Fed.Cir. 1985).

Salomon alleges that both elements are in dispute. As to materiality, Salomon notes that the known boot was admitted to be prior art. Once the boot was admitted to be prior art, asserts Salomon, the date on which it actually became prior art is irrelevant. This argument derives from the principle that an applicant need not submit merely cumulative references that, because they repeat what is already before the Examiner, are nonmaterial. *See Rolls–Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1107 (Fed.Cir.1986); *Kimberly–Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1455–56 (Fed.Cir.1984).

Salomon's materiality argument regarding the omitted information is misguided. While the known boot itself was disclosed, the fact that the boot was apparently on sale and the brochure was distributed prior to the critical date were not necessarily disclosed. Assuming the reference to the known boot did not disclose the publication date of the brochure or the distribution date of the known boot, these facts would not be cumulative and *would* be material.

■ Salomon's argument on the issue of intent is better taken. While the '671 applicant may have failed to specifically point out the publication date of the brochure or the distribution date of the known boot, there remains an issue of fact as to whether this omission evinced an intent to mislead. In finding intent to mislead, it is necessary that there be some element of wrongfulness, willfulness or bad faith. Mere negligent omissions or mistatements do not suffice. *Kangaroos*, 778 F.2d at 1576. Although some opinions have suggested that a finding of gross negligence compels a finding of intent to deceive, the Federal Circuit now holds that a finding of gross negligence does not of itself justify an inference of intent to deceive.[20] *See Kingsdown Medical Consultants v. Hollister Inc.*, 863 F.2d 867, 876 (Fed.Cir.1988). This inquiry into the state of mind of the patent applicant is generally fact-specific, and thus rarely amenable to decision by summary judgment. *Kangaroos*, 778 F.2d at 1576–77. *See generally* Adamo, *Summary Judgment Motion Practice as a*

---

**20.** The conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive. *Kingsdown Medical Consultants v. Hollister Inc.*, 863 F.2d 867, 876 (Fed.Cir.1988).

*Tool of the Accused Infringer,* 69 J.Pat. Off.Soc'y. 461, 474–76 (Sept.1987).

Rossignol does not really dispute these legal standards. Rather, it argues that the omitted information is so material and the applicant's knowledge of it so clear that they raise an inference of intent sufficiently strong to require a convincing showing of subjective good faith to offset it. *See FMC Corp.,* 835 F.2d at 1415 n. 7. The Court is unpersuaded.

Assuming the validity of Rossignol's estoppel theory based on *Gemveto,* it is true that information regarding the publication date of the brochure and the distribution date of the known boot would be highly material. However, the record is not clear on the applicant's knowledge of materiality. If the '671 applicant thought that this information was sufficiently disclosed by its reference to the known boot, then it could have had a good-faith belief that further information would be merely cumulative. A patent applicant may rebut a prima facie case of inequitable conduct by showing that it did not know the materiality of the information. *FMC Corp.,* 835 F.2d at 1415. This knowledge on the part of the '671 applicant and the applicant's subjective good faith are fact-sensitive inquiries.

 Viewing the evidence in the light most favorable to the non-movant, Salomon, the Court finds that the matter of the '671 applicant's intent to deceive or mislead is a genuine issue of material fact that precludes summary judgment on the unenforceability of the patent. *See Baker Oil Tools,* 828 F.2d at 1566 (remanding inequitable conduct issue to determine intent).

## V. CONCLUSION

Examining the facts on this motion for partial summary judgment in the light most favorable to Salomon, and drawing any inferences in its favor, it cannot be said that the '671 patent is invalid or unenforceable as a matter of law. Salomon has come forward with sufficient countervailing evidence to rebut Rossignol's prima facie showing that Salomon acquiesced in the Examiner's determination of obviousness, thus precluding a holding of invalidity at this time. Concerning the unenforceability of the '671 patent, there remains an issue of fact as to the intent of the patent applicant to mislead the Examiner.

For the foregoing reasons, Rossignol's motion for partial summary judgment is denied. Salomon's request that it be awarded its costs and attorney's fees incurred in responding to Rossignol's motion also is denied. The Court will enter an Order in accordance with this Opinion.